IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CINDY D. W., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 4:25-CV-86-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(b) and the parties' consent to proceed before the undersigned United States magistrate judge, the Court now considers this appeal of the denial of Plaintiff's application for Social Security supplemental income and disability benefits.  For the reasons outlined here, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security supplemental income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act").  Doc. 1. In 2021, Plaintiff filed for DIB and SSI, alleging a period of disability beginning in March 2019, resulting from deteriorating neck disk, right shoulder deterioration, left hand deformation, arthritis in both arms, arthritis in both shoulders, arthritis in both hands, and deterioration in lower back disk.  Doc. 16-1 at 191-92.  Plaintiff's claim was denied at all administrative levels and she now appeals to this Court under 42 U.S.C. § 405(g).  Doc. 16-1 at 104-05, 29-45, 6.

**B. Factual History**

Plaintiff was 46 years old at the time of her alleged disability, and had at least a high school education and past relevant work as an area director and a cosmetologist. Doc. 16-1 at 43. Plaintiff's relevant medical history, spanning from 2019 through 2024, reveals left shoulder surgery, neck, shoulder, and back pain, obesity and depression. Doc. 16-1 at 400-79, 388.

**C. Medical Opinion Evidence**

In 2022, Dr. James Jensen, Psy.D., performed a consultative examination of Plaintiff. Doc. 16-1 at 385-88. Dr. Jenson evaluated Plaintiff's ability to concentrate and noted she could not calculate serial sevens and calculated serial threes with 60% accuracy. Doc. 16-1 at 388. Dr. Jenson diagnosed Plaintiff with depressive disorder due to general medical condition (hand injury). Doc. 16-1 at 388. He further noted that in addition to Plaintiff's narrative of symptoms, behavioral observations portrayed Plaintiff in a despondent state, and Plaintiff also evidenced mental status difficulty suggesting a level of cognitive sluggishness consistent with depressed patients. Doc. 16-1 at 388.

In 2022, state agency consultative psychologist ("SACP"), Dr. Stephen Drake, Ph.D., provided a Psychiatric Review Technique Assessment ("PRT") and Mental Residual Functional Capacity Assessment ("MRFCA") after reviewing Plaintiff's medical records. Doc. 16-1 at 87-88, 90-91. In his PRT, Dr. Drake opined that Plaintiff was mildly limited in her ability to understand, remember, or apply information; interact with others; and adapt or manage oneself, and moderately limited in her ability to concentrate, persist, or maintain pace. Doc. 16-1 at 87. In the MRFCA, Dr. Drake opined that Plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; and complete a

2

normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Doc. 16-1 at 90-91. In the narrative portion of the MRFCA, Dr. Drake stated Plaintiff was "maximally able to understand, remember, and carry out simple instructions, make basic decisions, attend and concentrate for extended periods, interact with others, accept instructions and respond to changes in a routine work setting." Doc. 16-1 at 91. During the reconsideration stage, Dr. Drake's opinion was supported by SACP Dr. Nicole Mannis, Psy.D. Doc. 16-1 at 94-95, 98-99.

In 2022, Dr. Leigh McCary, M.D., provided a Physical Residual Functional Capacity Assessment after reviewing Plaintiff's medical records. Doc. 16-1 at 89-90. Dr. McCrary opined that Plaintiff was capable of light work, but with limitations for frequent handling and fingering and occasionally climbing ladders, ropes, or scaffolds. Doc. 16-1 at 89-90. During the reconsideration stage, Dr. McCary's opinion was supported by state agency medical consultant ("SAMC") Dr. Phillip Matar, M.D. Doc. 16-1 at 97-98.

In 2023, Dr. Matar provided a Physical Residual Functional Capacity Assessment after reviewing Plaintiff's medical records. Doc. 16-1 at 97-98. Dr. Matar opined that Plaintiff was capable of light work, but with limitations for frequent handling and fingering and occasionally climbing ladders, ropes, or scaffolds. Doc. 16-1 at 97.

In 2023, SACP Dr. Mannis provided a PRT and MRFCA after reviewing Plaintiff's medical records. Doc. 16-1 at 95-96, 98-99. In her PRT, Dr. Mannis opined that Plaintiff was mildly limited in her ability to understand, remember, or apply information; interact with others; and adapt or manage oneself, and moderately limited in her ability to concentrate, persist, or

maintain pace.  Doc. 16-1 at 95.  In the MRFCA, Dr. Mannis specified that Plaintiff was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Doc. 16-1 at 99.  In the narrative portion of the MRFCA, Dr. Mannis stated Plaintiff was "maximally able to understand, remember, and carry out simple instructions, make basic decisions, attend and concentrate for extended periods, interact with others, accept instructions and respond to changes in a routine work setting."  Doc. 16-1 at 99.

In 2023, Dr. Olubukola Amudipe, M.D., conducted a consultative examination of Plaintiff.  Doc. 16-1 at 389-99.  After the examination, Dr. Amudipe diagnosed Plaintiff with polyarthritis, traumatic arthropathy, left hand, other specified arthritis, right shoulder, and cervical degenerative disc disease.  Doc. 16-1 at 394.  Regarding Plaintiff's functional capacity, Dr. Amudipe stated Plaintiff's "current ability to do work related activities such as sitting is unlimited.  Her ability to stand, walk, lift and carrying objects is limited due to daily and chronic neck and lower back pain secondary to degenerative disc disease.  Hearing, speaking abilities are unimpaired."  Doc. 16-1 at 394 (errors in original).

**D. Other Record Evidence**

At the 2024 administrative hearing, Plaintiff testified that she stopped working as a hairdresser after 30 years because her shoulder, neck, and back pain, along with a 2019 accident, made work "impossible."  Doc. 16-1 at 57-58.  Plaintiff testified that she briefly returned to work in an office.  Doc. 16-1 at 58.  Plaintiff stated she had a driver's license and could drive

independently.  Doc. 16-1 at 58.  Plaintiff also testified that she had constant neck pain that radiated up the back of her head and onto her left arm, and that moving her arms too much exacerbated the pain.  Doc. 16-1 at 59.  Plaintiff said she received injections to alleviate her symptoms but that it was ineffective.  Doc. 16-1 at 60.  Plaintiff also stated she had shoulder surgery after tearing her left rotator cuff and that it "helped a little bit but not 100%" with her shoulder pain.  Doc. 16-1 at 62.  Plaintiff also testified that she had left hand pain that radiated up her arm, which did not improve after surgery.  Doc. 16-1 at 61.   Plaintiff testified that lifting her arms made her shoulder pain worse.  Doc. 16-1 at 63.

Plaintiff also testified that she suffered from depression, which increased after her physical injuries became more painful.  Doc. 16-1 at 63.  Plaintiff stated she took Xanax, which helped a little.  Doc. 16-1 at 63-65.  Plaintiff further testified that she lay in bed often and did not go out in public much.  Doc. 16-1 at 65-66.  Plaintiff stated that she did not mop, vacuum or walk anywhere because of her pain, but that she was able to wash dishes and fold laundry.  Doc. 16-1 at 67.  Plaintiff testified that she rarely shopped alone but that she could go to nearby stores on her own.  Doc. 16-1 at 68. According to Plaintiff, she could walk seven-to-ten minutes at a time, stand for ten-to-fifteen minutes before her pain started to bother her, and lift five-to-six pounds comfortably, but could not climb a flight of stairs without stopping.  Doc. 16-1 at 69-70.

Regarding her hand pain, Plaintiff testified that she had issues with both her right and left hands, but that the trouble with her right hand might have been from being a hairdresser for 30 years.  Doc. 16-1 at 71.  Plaintiff stated she could not open a jar or type with her left hand, but could turn a doorknob after a few tries, write with a pencil, button a shirt, use a mobile phone, and cut her food with a knife or fork.  Doc. 16-1 at 71-72

A vocational expert ("VE") also testified.  In response to the ALJ's inquiry, the VE stated that someone with Plaintiff's age, education, work experience, and the ALJ's hypothetical RFC could not perform Plaintiff's past work but could perform other light work[1] in the national economy such as officer helper, mail clerk, and cafeteria attendant.  Doc. 16-1 at 77.  The VE also testified that while these jobs would be precluded if the hypothetical individual could only occasionally handle and finger objects bilaterally, such individual could still perform other light work.  Doc. 16-1 at 78-79.  Specifically, the VE testified that the hypothetical individual could perform the light exertion occupations of lobby attendant, school bus monitor, and rental clerk.  Doc. 16-1 at 78-79.  Finally, the VE testified that no jobs existed in the national economy for someone with Plaintiff's age, education, work experience, and who was limited to sedentary work.  Doc. 16-1 at 79.

### E. The ALJ's Findings

Following the administrative hearing, the ALJ issued his Hearing Decision utilizing the five-step sequential evaluation set forth in 20 C.F.R. § 416.920 in determining whether Plaintiff was disabled.  At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025, and had not engaged in substantial gainful activity since March 21, 2019.  Doc. 16-1 at 31.  At step two, the ALJ determined that Plaintiff had the severe impairments of cervical spine disorder, bilateral hand disorder, and depressive disorder.  Doc. 16-1 at 31.  However, the ALJ found that none of Plaintiff's impairments, singularly or in combination, met or medically equaled any listed impairment.  Doc. 16-1 at 33.

---

[1] Light work is defined "as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  SSR 83-10 (S.S.A. 1983), 1983 WL 31251.

At step three, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC")[2] to perform "light work . . . except she can occasionally climb ladders, ropes, or scaffolds; occasionally reach overhead bilaterally; frequently handle/finger bilaterally, and understand, remember, and carry out simple tasks and instructions."  Doc. 16-1 at 35.

At steps four and five, the ALJ found that Plaintiff did not have the RFC to perform her past relevant work, but that there were a significant number of other jobs in the national economy that Plaintiff could perform.  Doc. 16-1 at 43.  The ALJ thus concluded that Plaintiff was not disabled under the Act.  Doc. 16-1 at 44.

## II. APPLICABLE LAW

Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions.  42 U.S.C. § 405(g).  The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other

---

[2] The RFC is "the most [a claimant] can still do despite [the claimant's] limitations."  20 C.F.R. § 416.945(a)(1).

available work.  *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden on the first four steps.  *Id.* (citation omitted).  If the claimant meets her burden, the burden then shifts to the Commissioner to "prove the claimant's employability."  *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence."  *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012).

> And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted).  The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

The ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  When evaluating physical limitations, the ALJ will "first assess the nature and extent of [the plaintiff's] physical limitations and then determine [the plaintiff's] residual functional capacity for work activity on a regular and continuing basis."  *Id.* § 404.1545(b).  The ALJ "must build an accurate and logical bridge between the evidence and the final determination."  *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010).  However, the ALJ is not required to incorporate limitations in the RFC that he or she found unsupported in the record.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the

8

sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). Nevertheless, "the ALJ cannot completely disregard medical testimony in making an RFC determination . . ." *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 553 (S.D. Miss. 2022).

"There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion." *Nic R. v. Kijakazi*, No. 3:22-cv-106, 2023 WL 2529930, at *3 (N.D. Tex. Feb. 21, 2023) (citation omitted) (Rutherford, J.), *adopted by* 2023 WL 2531492 (N.D. Tex. Mar. 15, 2023). "Even the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC determination." *Id.* at *5 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) and *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (per curiam)). Although the Plaintiff's "RFC is ultimately the ALJ's determination," there must be a "foundational basis" for the determination. *Cary G. T. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-1948, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (Toliver, J.) (emphasis removed).

## III. ANALYSIS

Plaintiff argues that the RFC formulated by the ALJ is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ committed reversible error by (1) rejecting the medical opinion of Dr. Amudipe and (2) failing to fully incorporate in the RFC the limitations determined by two state agency psychological consultants whose reports the ALJ found persuasive. Doc. 19, *passim*.

Plaintiff's arguments are unavailing.

### A. ALJ's mischaracterization of Dr. Amudipe's reports was error.

Plaintiff contends that the ALJ's disability determination was not supported by substantial evidence because the ALJ incorrectly found Dr. Amudipe's report was not a medical opinion as defined by the Act. Doc. 19 at 6. The Commissioner counters that the ALJ correctly found that Dr. Amudipe's report did not constitute a medical opinion. Doc. 21 at 4. Upon review, the Court concludes that while Dr. Amudipe's report was a medical opinion, any error by the ALJ in properly evaluating it as such was harmless.

*1. Dr. Amudipe's reports are medical opinions.*

The Social Security Administration (SSA) may not award benefits unless a claimant submits "medical and other evidence" of disability. 42 U.S.C. § 423(d)(5)(A); *see id.* § 1382c(a)(3)(H)(i). However, not all evidence a claimant submits is entitled to equal weight. For example, a claimant's own statements "as to pain or other symptoms" are not, on their own, "conclusive evidence of disability." *Id.* § 423(d)(5)(A). Instead, evidence of disability must include "medical signs and findings, established by medically acceptable" techniques. *Id.* § 423(d)(5)(A). The category of the evidence dictates how it should be evaluated. *See* 20 C.F.R. §§ 404.1520c, 404.1527, 416.920c, 416.927 (2017).

Before 2017, SSA regulations distinguished between "[o]bjective medical evidence" and "[o]ther evidence from medical sources." 20 C.F.R. §§ 404.1512(b)(1), 416.912(b)(1) (2015). "Objective medical evidence" included "medical signs and laboratory findings," while "[o]ther evidence from medical sources" included "medical history, opinions, and statements about treatment." 20 C.F.R. § 404.1512(b)(1). Pre 2017, under the subcategory of medical opinion evidence, ALJs were required to "evaluate every medical opinion." 20 C.F.R. §§ 404.1527(c),

10

416.927(c) (2012).  The old regulations further defined a medical opinion to include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [the claimant's] impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Eventually, however, the SSA became of the view that "a narrower definition of medical opinions would improve [the] adjudicative process." 81 Fed. Reg. 62562 (Sept. 9, 2016).  The SSA thus sought to exclude "[d]iagnoses and prognoses" from the definition of medical opinions because that information did not "describe how an individual functions." *Id.*  "A more appropriate focus," the SSA determined, would be "perspectives from medical sources about claimants' functional abilities and limitations." *Id.*

Consequently, the SSA revised its regulations in 2017.  Though the regulations continue to define "[o]bjective medical evidence" as "medical signs" and "laboratory findings," they now differentiate between "[m]edical opinion" evidence and "[o]ther medical evidence." 20 C.F.R. §§ 404.1513(a), 416.913(a).  The regulations now include the following definition:

> A medical opinion is a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in the following abilities:
>
> * * *
>
> (i) [Claimant's] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

11

> (ii) [Claimant's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) [Claimant's] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) [Claimant's] ability to adapt to environmental conditions, such as temperature extremes or fumes.

*Id.* § 404.1513(a)(2)(i)–(iv).

Notably, the current definition of "medical opinion" no longer includes the professional's judgments about the nature and severity of a claimant's impairments, which are now included in the definition of "other medical evidence":

> Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, *including judgments about the nature and severity of [a claimant's] impairments*, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis. . . .

*Id.* §§ 404.1513(a)(3), 416.913(a)(3) (emphasis added).

When evaluating whether a medical opinion is persuasive, the ALJ must consider five factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the provider's opinion. 20 C.F.R. § 404.1520c(c). As the first two are "the most important factors," the regulations state that the ALJ "will explain" how he or she considered them. *Id.* § 404.1520c(b)(2). However, the ALJ need not explain how he or she considered the three remaining factors. *Id.*

The Court of Appeals for the Fifth Circuit has not yet offered guidance on what qualifies as a "medical opinion" under the current definition, but several other circuits have. The Tenth Circuit has observed that "the current definition of a medical opinion requires 'a statement from

12

a medical source' about *both* 'what the claimant can still do despite her impairment(s)' *and* 'whether she has one or more impairment-related limitations or restrictions in specified abilities.'" *Staheli v. Soc. Sec. Admin., Comm'r*, 84 F.4th 901, 906 n.2 (10th Cir. 2023) (quoting 20 C.F.R. § 404.1513(a)(2)) (emphasis in original) (alterations adopted).  The Eleventh Circuit, in an unpublished decision, appears to endorse a similar view.  *See Ball v. Soc. Sec. Admin., Comm'r*, No. 24-12496, 2025 WL 1010204, at *3 (11th Cir. Apr. 4, 2025) ("The lifting, pushing, and pulling limitations were not 'medical opinions' because they did not address [the plaintiff's] ability to perform demands of work 'despite [his] impairment(s).'  They addressed activities [the plaintiff] should not engage in at all, not what he could still do in a work context." (internal citation omitted)).

Conversely, the Seventh Circuit recently disagreed with the Tenth Circuit's determination in *Staheli* that a medical opinion must address both factors.  *Jones v. Dudek*, 134 F.4th 991, 996 (7th Cir. 2025).  The Seventh Circuit instead observed that the "medical opinion" definition "sweeps more broadly."  *Id.* at 997 ("We see no requirement that a 'medical opinion' limit itself only to statements about whether a claimant can perform specific workplace demands such as sitting, standing, walking, lifting, or carrying.").

In this instance, however, the result is the same under either interpretation—that Dr. Amudipe's statements in his 2023 report constitute a medical opinion under the SSA regulations.

In his 2023 report, Dr. Amudipe opined that Plaintiff's "current ability to do work related activities such as sitting is unlimited.  Her ability to stand, walk, lift and carry[] objects is limited due to daily and chronic neck and lower back pain secondary to degenerative disc disease.  Hearing, speaking abilities are unimpaired."  Dr. Amudipe also described specific work-related

13

functions—i.e., sitting, speaking, and hearing—that Plaintiff can perform, despite her limitations in the work-related functions of standing and walking, and lifting, and carrying objects. *See* 20 C.F.R. §§ 404.1513(a)(2)(i). Thus, his report meets the more stringent, two-part definition of a "medical opinion" under the Tenth Circuit's more narrow approach in *Staheli*.[3] So, as Plaintiff correctly argues, the ALJ should have evaluated the persuasiveness of Dr. Amudipe's statements as medical opinions under 20 C.F.R. § 404.1520c. The ALJ's failure to do so was error.

2. *No prejudice resulted from the ALJ's mischaracterization.*

As signaled *supra*, the Court's further review reveals that the ALJ's error in not properly evaluating Dr. Amudipe's opinion is harmless. Thus, remand is not warranted.

"[P]rocedural perfection in administrative proceedings is not required'" *Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007)* (citation omitted). Thus, the "court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)*. "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul, 986 F.3d 551, 556 (5th Cir. 2021)*. The plaintiff has the burden to show prejudice or harm from the error. *Jones v. Astrue, 691 F.3d 730, 734-35 (5th Cir. 2012)*.

Plaintiff has not met that burden here. It is inconceivable and unlikely, based on the record evidence, that the ALJ would have formulated a different RFC absent his procedural error of not evaluating Dr. Amudipe's reports as medical opinions—that is, failing to specifically state

---

[3] The ALJ rejected examination reports completed by Dr. Amudipe in 2022 and 2023. Doc. 16-1 at 373, 389. Plaintiff, however, only argues that the ALJ erred in not considering the 2023 report and the parties' briefings do not discuss the 2022 report. Thus, the Court's discussion is limited to the 2023 report.

in his Hearing Decision how he considered the supportability and consistency factors of Dr.

Amudipe's opinions.  *See* 20 C.F.R. § 404.1520c(c).  Plaintiff argues,

> remand is required because the ALJ's failure to assess Dr. Amudipe's opinion is not without harm – even under the assumption that he would have found it unpersuasive.  This is because the ALJ's lack of analysis "makes it impossible to know whether the ALJ properly considered and weighed [her] opinion, which directly affects the RFC determination."

Doc. 19 at 7 (quoted cases omitted).  But it is not necessary to assume whether the ALJ found

Dr. Amudipe's opinions unpersuasive, since the ALJ explicitly stated that he considered them:

> While I considered the reports from the consultative medical exams conducted by Dr. Amudipe in June 2022 and July 2023 to determine the severity of the claimant's physical impairments and her residual functional capacity, Dr. Amudipe did not provide a medical opinion, i.e., a statement from a medical source about what the claimant can still do despite her impairment(s).

Doc. 16-1 at 41.  Again, procedural perfection is not required.

The Court notes that the ALJ's RFC is generally consistent with Dr. Amudipe's medical

opinion.  The ALJ stated he also considered the medical opinions of Drs. McCary, Matar, Drake,

and Mannis, all of which the ALJ found persuasive and were overall consistent with Plaintiff's

physical and mental RFC.  Importantly, Plaintiff does not point to any specific limitation

endorsed by Dr. Amudipe that is not taken into account by the ALJ's RFC findings.  As such,

Plaintiff has failed to demonstrate prejudice.

**B.  The ALJ's mental RFC findings are supported by substantial evidence**

Plaintiff also argues that the ALJ erred "because he did not explain why he departed from

the state agency psychologist consultants' medical opinions after finding them persuasive."  Doc.

19 at 7.  The Commissioner contends that "Plaintiff's argument thus relies on her overstated

interpretation of Drs. Drake and Mannis's prior administrative medical findings and is therefore meritless." Doc. 21 at 6-7. Upon review, Plaintiff's argument fails.

In his MRFCA, Dr. Drake stated that Plaintiff was "maximally able to understand, remember, and carry out simple instructions, *make basic decisions*, attend and concentrate for extended periods, interact with others, accept instructions and respond to changes in a routine work setting." Doc. 16-1 at 91 (emphasis added). Dr. Drake's opinion was supported by Dr. Mannis. Doc. 16-1 at 99. In his Hearing Decision, the ALJ noted this corroboration and found "the Psychiatric Review Technique evaluations and Mental Residual Functional Capacity assessments completed by Drs. Drake and Mannis persuasive." Doc. 16-1 at 41.

Plaintiff appears to quibble with the form, rather than the substance of the ALJ's mental RFC limitations, arguing that the ALJ erred in failing to adequately incorporate the make-basic-decision limitation in Plaintiff's RFC and then explain why he did not. Doc. 19 at 8. This argument wholly discounts the ALJ's explicit finding that Plaintiff could "understand, remember, and carry out simple tasks and instructions." Doc. 16-1 at 35. And although the specific phrase, "make basic decisions," does not appear in the RFC, the Court cannot fathom why it is not sufficiently incorporated in Plaintiff's limited ability to "understand, remember, and carry out simple tasks and instructions," as specified in the RFC. Moreover, Plaintiff does not explain how using the specific phrase "make basic decisions," would have changed the ALJ's finding that she could perform light work. As Plaintiff correctly notes, the RFC need not "mirror or match a medical opinion" to be supported by substantial evidence. *Sherri L. v. Comm'r, Soc. Sec. Admin.*, No. 3:23-cv-1919, 2024 WL 4343048, at *5 (N.D. Tex. Sept. 27, 2024) (Toliver, J.) (citations omitted). *See, e.g., Moreno v. Comm'r of Soc. Sec. Admin.*, 698 F. Supp. 3d 935, 948-

16

51 (W.D. Tex. 2023) (finding RFC supported by substantial evidence where ALJ found medical opinion persuasive but did not include opinion's gripping limitation in the RFC).

In addition to including the substance of Drs. Drake and Mannis's findings in the RFC, the ALJ assessed Plaintiff's RFC based on other categories of evidence, including other medical evidence and Plaintiff's medical records, which included physical examinations and self-reported medical history, and her hearing testimony. Doc. 16-1 at 33-44.

On this record, the Court concludes that the ALJ's RFC mental limitations were based on substantial evidence, and that, in any event, Plaintiff was not prejudiced by the ALJ's failure to specifically include Plaintiff's maximal ability to "make basic decisions" in the RFC.

## IV. CONCLUSION

The ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on March 27, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE